IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CENTIMARK CORPORATION, *a*
*Pennsylvania corporation*,

        Plaintiff,

        v.

DONALD LAVINE, *an individual*,

        Defendant.

11cv0757

**ELECTRONICALLY FILED**

MEMORANDUM OPINION RE: DEFENDANT'S MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION AND IMPROPER VENUE OR ALTERNATIVELY MOTION
TO TRANSFER VENUE (Doc. No. 23)

## I. Introduction

Presently before this Court is Defendant, Donald Lavine's Motion to Dismiss for Lack of

Personal Jurisdiction and Improper Venue or alternatively Motion to Transfer Venue. Doc. No.

23. After careful consideration of Defendant's Motion (Doc. No. 23), brief in support thereof

(Doc. No. 25), Plaintiff's Response thereto (Doc. No. 35), and Defendant's Reply Brief (Doc.

No. 56), Defendant's Motion will be DENIED.

## II. Factual Background

The facts of the case, as taken from Plaintiff's Complaint and accepted as true solely for

the purpose of this Opinion are as follows:

Defendant, Donald Lavine, is a former employee of Plaintiff, CentiMark, which is a

national commercial roofing company based in Pennsylvania. Doc. No. 1, ¶¶ 1-2. Lavine signed

an Employment Agreement with CentiMark on November 12, 1998 and began his employment

on November 16, 1998. Id. at ¶ 16. Lavine's Employment Agreement, which was signed and

initialed on each page, provided the following:

1. Post-employment restrictions on competition

2. A requirement to notify CentiMark of future employment

3. CentiMark's right to obtain injunctive relief to enforce the agreement

4. Pennsylvania law would govern any dispute about the Employment Agreement

5. Any legal actions to enforce the Employment Agreement would be brought in Washington County, Pennsylvania.

Id. at ¶ 24.

Although initially hired as a Technical Representative, Lavine eventually became a Senior Project Manager assigned to the metro portions of Detroit, Michigan, with key contacts with CentiMark customers. Id at ¶ 2. As part of his duties, Lavine had access to confidential proprietary business information regarding CentiMark's current and potential customers and pricing. Id. at ¶ 14. Lavine's Employment Agreement provided that he be bound by post-employment obligations, including non-disclosure of such confidential information, a non-compete provision, and a non-solicitation of customer provision. Id. at ¶ 28.

In or about September 2010, CentiMark discovered that Lavine had improperly emailed sensitive CentiMark documents, including a list of all CentiMark warranty customers in Michigan, to his personal email address. Id. at ¶¶ 54-55. The list of all CentiMark warranty customers is an important confidential document because it indicates when particular businesses, which were often large, important, repeat customers which "generat[ed] millions of dollars of revenue on an annual basis," may need CentiMark or a competitor's roofing services. Doc. No. 1, ¶ 38, 41-45, 58. CentiMark was suspicious of Lavine's actions because of comments that he had made regarding his desire to set up a competing business. Id. at ¶ 62. When confronted, Lavine responded that he needed the documents to enable him to work from home. Id. at ¶ 64.

CentiMark demanded that Lavine return the documents, which it was assured would be returned. Id. at ¶¶ 65-66.

However, on October 7, 2010, CentiMark terminated Lavine because he had downloaded proprietary and confidential documents to his personal email address, which had not been returned, and because his performance had decreased (arguably because he had been planning to leave CentiMark to work for one of its competitors). Doc. No. 1 at ¶ 62, 67. On December 14, 2010, in response to a letter sent by CentiMark regarding the information Lavine had downloaded to his personal email address, Lavine signed an acknowledgment that he had the opportunity to review his Employment Agreement and understood his obligation to return confidential information and to notify CentiMark of any new employment. Id. at ¶¶ 68, 70.

Subsequently, Lavine became employed by a direct competitor, Great Lakes Roofing, Inc., but did not notify CentiMark as was required by section 4.08 of his Employment Agreement. Doc. No. 1, ¶¶ 73-76. CentiMark customers have informed CentiMark that Lavine has contacted them to solicit business for Great Lakes. Id. at ¶ 77. Other customers who would have selected CentiMark to complete substantial roofing projects in 2011 have instead decided to use Great Lakes. Id. at ¶ 78. The materials downloaded by Lavine have not been returned to CentiMark. Doc. No. 1. Furthermore, despite this Court's June 13, 2011, Order (Doc. No. 9) directing that all parties were to "preserve, maintain and protect" all documents and software identified in Plaintiff's First Request for Production of Documents, Lavine has failed to produce his laptop hard drive for discovery purposes, and has informed this Court that such hard drive is now missing.

### III. Standard of Review

When deciding a Rule 12(b)(2) motion, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (internal quotes and citation omitted). Once personal jurisdiction is challenged, the burden rests upon the plaintiff to establish it. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). To establish personal jurisdiction and defeat a Rule 12(b)(2) motion to dismiss, plaintiff must go beyond the pleadings and make an affirmative proof. *See Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996) (plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper).

The Pennsylvania long arm statute permits the courts of Pennsylvania to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the Due Process clause of the Fourteenth Amendment. *Dollar Sav. Bank v. First Sec. Bank, N.A.*, 746 F.2d 208, 211 (3d Cir. 1984). The Due Process clause permits courts to exercise two types of personal jurisdiction over a defendant: general and specific. *See Mellon Bank (East) PSFS, Natl Assn. v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992).

General jurisdiction is the broader of the two types, and is supported where a defendant has maintained systematic and continuous contacts with the forum state. *See Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). The contacts need not be related to the particular claim proceeding in court. *Metcalfe*, 566 F.3d at 334. If a party is subject to the general jurisdiction of a state, that party can be called to answer any claim against her, regardless of whether the subject matter of the cause of action has any connection to the forum. *Mellon Bank*, 960 F.2d at 1221.

Absent "continuous and systematic" contacts, a plaintiff may rely on "specific jurisdiction" where the cause of action is related to or arises out of the defendant's contacts with the forum. *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 259 n.2 (3d Cir. 1998).

### IV. Discussion

Lavine seeks dismissal of CentiMark's Complaint, which alleges: (1) breach of contract, (2) violation of the Pennsylvania Uniform Trade Secrets Act, (3) tortious interference with contract and with prospective business relations, (4) unfair competition, and (5) breach of fiduciary duty/duty of loyalty. Doc. No. 1. In support of his Motions, Lavine argues that he is not subject to personal jurisdiction or venue in Pennsylvania because but for his Employment Agreement, which he contends is a contract of adhesion, he would not be amenable to suit in Pennsylvania for any cause of action. Doc. No. 25, 2. In the alternative, Lavine contends that even if the Employment Agreement's forum selection clause is valid, venue should be transferred to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a), a forum which is more convenient for the parties, the witnesses and is in the interests of justice. Id.

### a. Motion to Dismiss Based Upon Lack of Personal Jurisdiction

Pursuant to Federal Rule of Civil Procedure 4(k), district courts determine personal jurisdiction according to the law of the state in which they sit. Personal jurisdiction in Pennsylvania is proper when both the Due Process clause of the Fourteenth Amendment and Pennsylvania's Long-Arm statute, 42 Pa. C.S.A. §§ 5301, 5322, are satisfied. *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 293 (3d Cir. 1985). According to Pennsylvania's Long-Arm statute, personal jurisdiction exists "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed

under the Constitution of the United States." 42 Pa. Con. Stat. § 5322(b).[1]   Pursuant to the Due

Process Clause of the Fourteenth Amendment, a non-citizen may be subject to jurisdiction in a

forum, when there are sufficient minimum contacts with the forum so that requiring litigation in

the forum does not offend "traditional notions of fair play and substantial justice."  *Int'l Shoe Co.*

*v. Washington*, 326 U.S. 310, 316 (1945).

In support of his Motion to Dismiss, Lavine contends that his Employment Agreement's

forum selection clause does not subject him to personal jurisdiction in Pennsylvania.  The

applicable forum selection clause provides that:

> this Agreement shall be governed by and construed in accordance with the laws of
> the Commonwealth of Pennsylvania and Employee hereby irrevocably submits to
> the personal jurisdiction of the courts sitting in Washington County, Pennsylvania
> in any action or proceeding arising out of, or relating to, this Agreement . . . .
> Jurisdiction and venue of all causes of action arising out of, or related to, this
> Employment Agreement shall be exclusively vested in the state or federal courts
> in Washington County, Pennsylvania.

Doc. No. 1-2, ¶ 7.06.

Lavine contends that the forum selection clause in his Employment Agreement is

unenforceable as a means to subject him to personal jurisdiction in Pennsylvania because it is

unreasonable.  Doc. No. 25, 3.[2]

A. *The Forum Selection Clause in Lavine's Employment Agreement is Not Unreasonable*

Lavine's main argument is that the Employment Agreement's forum selection clause is

unreasonable, and therefore unenforceable, because he had allegedly left his previous

---

[1] In Pennsylvania, because the Commonwealth's jurisdictional statute expressly incorporates the
federal due process standard, the inquiry is principally limited to the constitutional propriety of
the exercise of jurisdiction.  *See Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 279 (3d Cir. 1994).

[2] Lavine also infers that he does not have continuous and systematic contacts with Pennsylvania
to subject him to general personal jurisdiction and because the suit against him is premised only
on actions that occurred in Michigan, there is no specific jurisdiction in the Commonwealth.
Doc. No. 25, 3.

employment and accepted the position when the Employment Agreement was presented to him and when he had no meaningful choice but to sign. Doc. No. 25, 3, *citing Dentsply Int'l, Inc. v. Benton*, 965 F. Supp. 2d 574, 579-80 (M.D. Pa. 1997).

A forum selection clause is *prima facie* valid unless the defendant proves that its enforcement would be unreasonable. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972). Unreasonableness may be established by demonstrating that: 1) the plaintiff procured the forum selection clause through fraud or overreaching or 2) the agreed-upon forum is so gravely inconvenient that defendant will effectively be deprived of access to the court. *Id.*

As to the first prong, there is no evidence of fraud or overreaching in the Employment Agreement's forum selection clause. Courts generally enforce a forum selection clause in employment cases where the contract was executed "while the employee still had a choice to enter into the employment relationship." *Barbuto v. Medicine Shoppe Int'l, Inc.*, 166 F. Supp. 2d 341, 346-47 (W.D.Pa. 2001) *quoting Behavioral Health Industry News, Inc. v. Lutz*, 24 F. Supp. 2d 401, 402-03 (M.D.Pa. 1998). Lavine's argument that he effectively had "no choice" but to sign the Employment Agreement is not persuasive because it was signed by Lavine before he began employment. Doc. No. 1-2. Even though Lavine may have already notified his previous employer that he would be leaving, he still had a choice to enter into the employment relationship with CentiMark. *Lutz*, 24 F. Supp. 2d at 402-403. Furthermore, Lavine's reliance on *Dentsply*, 965 F. Supp. 2d 574, is misplaced because unlike as in *Dentsply*, Lavine had not yet begun employment before signing his Employment Agreement, and therefore, he did not face the decision to either leave his position with CentiMark or sign the agreement.

There is also no evidence of overreaching because even if the Employment Agreement was a contract of adhesion, the forum selection clause would still be enforceable. *See GNC Franchising LLC v. Sala*, No. 06-0191, 2006 WL 1437170, at * 5 (W.D. Pa. Mar. 13, 2006).

Lavine has also not demonstrated that litigation in this Court is so "gravely inconvenient" that he would effectively be denied access to the litigation. *M/S Bremen*, 407 U.S. at 18. There have been no claims of financial hardship or physical limitations, nor that it would be "gravely inconvenient" to travel from Detroit to Pittsburgh. Therefore, because Lavine has not demonstrated that the forum selection clause was procured through fraud or overreaching or that litigation in this forum is so "gravely inconvenient" as to deny him access to the present lawsuit, his Employment Agreement's forum selection clause will be enforced.

B. *Specific Jurisdiction is Proper in this Forum*

The inquiry as to whether specific jurisdiction exists has three parts: (1) the defendant must have "purposefully directed [its] activities" at the forum (*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, (1985) (quotation marks omitted)); (2) the litigation must "arise out of or relate to" at least one of those activities (*Helicopteros Nacionales de Columbia , S.A. v. Hall et. al.*, 466 U.S. 408, 414 (1984); *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994)); and (3) if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" (*Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320)). *See also O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007).

This Court finds that Lavine purposely directed his activities at the forum when he became a CentiMark employee and signed his Employment Agreement that included a forum selection clause mandating that litigation based upon his employment would be brought in

8

Pennsylvania. The Employment Agreement also specified that CentiMark is a Pennsylvania corporation. *See Executive Sounding Board Associates, Inc. v. Barnett*, 1997 WL 47534, at * 4-5 (E.D. Pa. 1997) ("I find that there is ample evidence demonstrating that defendants . . . purposefully availed themselves of the privilege of conducting activities in Pennsylvania and that they could reasonably expect being hauled into court in Pennsylvania. First, the terms of employment agreement made [Defendants] aware that they were affiliating with "a Pennsylvania corporation . . . .").

As in *Burger King*, 417 U.S. 462, the present dispute arises directly from an Employment Agreement which has a substantial connection with Pennsylvania. This Employment Agreement had a forum selection clause which "reinforced his deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." *Burger King*, 417 U.S. at 481. Lavine has also regularly telephoned and emailed CentiMark's headquarters in the forum, received reimbursement under his Employment Agreement from the forum, traveled to Pennsylvania on at least three occasions for CentiMark related business, and accessed CentiMark's proprietary business information through its Pennsylvania computer servers.[3] Doc. No. 25-1, ¶¶ 44-46, 54-56, Doc. No. 35-4, ¶¶ 3-4, 7.

Furthermore, the present litigation arises and relates to actions taken both during and after Lavine's employment with CentiMark. The forum selection clause specified that it applied to all claims that "arise[] out of or relate[] to [the Employment] Agreement." Doc. No. 1-2, ¶ 7.07.

---

[3] Although Lavine cites *Techno Corp. v. Dahl Associates, Inc.*, 521 F.Supp. 1036, 1037 (W.D. Pa. 1981) and *Michaelson v. Exxon Research & Engineering Co.*, 588 F.Supp. 92, 93 (W.D. Pa. 1984) for the premise that contacts with a forum on behalf of a corporate employer are not a basis for personal jurisdiction, these cases are distinguishable in that in the present case, Lavine had contact with Pennsylvania, which although occurred while he was CentiMark's employee, were arguably undertaken for his personal benefit (ie. downloading CentiMark proprietary information to further employment with a competitor).

Therefore, because the instant dispute arose completely from Lavine's actions allegedly committed in violation of said Employment Agreement, it applies to all claims before this Court.

Finally, the Court must also determine whether jurisdiction in the present forum comports with "fair play and substantial justice." The Supreme Court has identified several factors to considering in undertaking such a determination. These factors include: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, [and] the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies." *Burger King*, 471 U.S. at 477 (quotation marks omitted). As previously discussed, Defendant has not demonstrated a great burden in litigating in the present forum. Furthermore, Plaintiff has filed in the forum which they believe best serves its interest in obtaining relief. Pennsylvania also has an interest in being the forum for the present lawsuit because Pennsylvania law controls many issues. Jurisdiction in the present forum also serves the judicial system's interest in obtaining the most effective resolution of controversies because this Court is familiar with the facts of the case and the applicable law. Therefore, subjecting Lavine to jurisdiction in the present forum comports with the traditional notions of "fair play and substantial justice."

In sum, subjecting Lavine to specific personal jurisdiction in Pennsylvania is proper. Therefore, because litigation of the present case in this District Court comports with both Pennsylvania's Long-Arm statute and the Due Process clause of the Fourteenth Amendment, Lavine's Motion to Dismiss will be denied.[4]

---

[4] Venue is also proper in this forum because Lavine waived the defense of improper venue when he signed the Employment Agreement containing the forum selection clause.

B. *Motion to Transfer Venue*

Alternatively, Lavine moves this Court to transfer the case to the United States District Court for the Eastern District of Michigan pursuant to the federal forum *non conveniens* statute, which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The United States Court of Appeals for the Third Circuit has provided district courts with an extensive list of factors to consider when examining a motion to transfer under section 1404 in *Jumara v. State Farm Ins.*, 55 F.3d 873, 877 (3d Cir. 1995).

The *Jumara* standard requires consideration of both "private and public factors"; the applicable private factors are: "(1) each party's forum preference; (2) where the claim arose; (3) the convenience of the parties as indicated by their relative physical and financial conditions; (4) the convenience of the witnesses; and (5) the locations of books and records." *Quantum Plating, Inc. v. Cent. Freight Lines, Inc.*, No. 09-166, 2011 WL 673913, at *6 (W.D. Pa. Feb. 17, 2011) (*citing Jumara*, 55 F.3d at 879). The applicable public factors are "(1) enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." Id. at *6 (*citing Jumara*, 55 F.3d at 879).

Analysis of the private factors demonstrates that venue is proper and preferable in Pennsylvania. The parties' fora preference is neutral. Although Lavine argues that the claim arose in Michigan, the claim is centered in both Michigan and Pennsylvania. Lavine downloaded documents to his personal computer located in Michigan, but such documents were

uploaded from servers in Pennsylvania which stored CentiMark's proprietary information.

Therefore, while Lavine's action occurred in Michigan, both the theft of property and loss

associated with it occurred in Pennsylvania. Many of the witnesses in this case are from

Michigan, however, the books and records of CentiMark, a Pennsylvania corporation, and

several witnesses from corporate headquarters are in Pennsylvania.

Pennsylvania also has a public interest in the litigation. The claims in this case involve

Pennsylvania law and favor Plaintiff's arguments against transferring the case. This Court is

also more familiar with and better equipped to apply Pennsylvania law. This Court is also

presiding over the case in an expeditious and thorough manner consistent with the parties'

schedules. Accordingly, considerations would make trial in the present forum "easy,

expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. Pennsylvania also has an interest in

deciding local controversies which involve losses to a Pennsylvania corporation.

Furthermore, the presence of a valid forum selection clause in Lavine's Employment

Agreement tips the balance of factors against transfer. When considering motions pursuant to

section 1404, "the presence of a contractual forum selection clause is a significant factor that

figures centrally in the district court's calculus." *GNC Franchising LLC*, at *2. "Although not

dispositive, a forum selection clause must be given 'substantial consideration,' since such a

clause is the manifestation of the parties' preferences as to a convenient forum." *Id.* (*quoting

Jumara*, 55 F.3d at 880). Moreover, where a forum selection clause is valid, the party moving

for transfer "bear[s] the burden of demonstrating why [he] should not be bound by [his]

contractual choice of forum." *Jumara*, 55 F.3d at 880.  As previously discussed, Lavine has not

demonstrated that the forum selection clause at issue is unreasonable.[5]

In sum, resolution of this case in Pennsylvania will is in the best interests of both private

and public factors.  Accordingly, this Court will deny Defendant's Motion to Transfer.

## V. *Conclusion*

For the foregoing reasons, Defendant's Motion to Dismiss or Alternatively to Transfer

Venue will be DENIED.  An appropriate Order follows.


                                  s/ Arthur J. Schwab
                                  Arthur J. Schwab
                                  United States District Judge


cc:     All Registered ECF Counsel and Parties

---

[5] Defendant asserts that the case should be transferred to Michigan on the authority of two cases from this District: *Centimark Corp. v. Saffold*, No. 07-342, 2007 WL 2317350 (W.D. Pa. Aug. 8, 2007) (Lancaster, J.) and *Centimark Corp. v. Tecta Am. Corp*., No. 08 Civ. 0593 (W.D. Pa. Oct. 6, 2008) (Bissoon, J.).  The present case is distinguishable from *Saffold* because the defendant there was bankrupt and asserted that the attorneys' fees and travel involved in his litigating case outside his home state would be "'financially devastating.'"  2007 WL 2317350, at *3.  Insofar as the Court in *Tecta* relied heavily on the decision in *Saffold*, the *Tecta* decision is distinguishable as well.