IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CENTIMARK CORPORATION, *a Pennsylvania corporation*,

    Plaintiff,

v.

DONALD LAVINE, *an individual*,

    Defendant.

11cv0757
**ELECTRONICALLY FILED**

**MEMORANDUM OPINION RE: PLAINTIFF'S MOTION TO CONVERT TEMPORARY RESTRAINING ORDER TO A PRELIMINARY INJUNCTION (DOC. NO. 42) AND DEFENDANT'S MOTION TO DISSOLVE OR MODIFY TEMPORARY RESTRAINING ORDER (DOC. NO. 50)**

### *I.     Introduction*

Presently before this Court are two motions, the first being Plaintiff, CentiMark's Motion to Convert Temporary Restraining Order ("TRO") to a Preliminary Injunction (Doc. No. 42), and the second being Defendant, Donald Lavine's Motion to Dissolve or Modify TRO (Doc. No. 50). After careful consideration of Plaintiff's Motion to Convert TRO to a Preliminary Injunction (Doc. No. 42), Memorandum in support thereof (Doc. No. 45), and Defendant's brief in opposition thereto (Doc. No. 65), Plaintiff's Motion will be GRANTED. As to the second motion, the Court has considered Defendant's Motion to Dissolve or Modify TRO (Doc. No. 50), Brief in support thereof (Doc. No. 54), and Plaintiff's Brief in opposition thereto (Doc. No. 61). Defendant's Motion to Dissolve or Modify TRO will be DENIED.

### *II.    Factual Background*

On June 8, 2011, CentiMark filed a Complaint against Lavine alleging breach of an Employment Agreement because of his post-employment actions. Doc. No. 1. CentiMark filed a Motion for a TRO and Preliminary Injunction on June 6, 2011, seeking that Lavine be enjoined

from: 1) working for a direct competitor; 2) actively soliciting the same customers that were his accounts while employed by CentiMark; 3) diverting business and customers away from CentiMark to a competitor; and 4) misappropriating CentiMark's confidential information. Doc. No. 4. On June 20, 2011, CentiMark's Motion was granted. Doc. No. 18. Subsequently, on June 29, 2011, Lavine filed a Motion to Dismiss for lack of personal jurisdiction or in the alternative to change venue. Doc. No. 23. Said Motion was denied by this Court on July 20, 2011. Doc. No. 62.

This Court incorporates further facts as previously set forth in Doc. No. 62, 1-3.

### III.    *Discussion*

In support of its Motion to Convert TRO to a Preliminary Injunction, CentiMark argues that: 1) it has demonstrated a reasonable probability on the merits because Lavine knowingly entered into his Employment Agreement with adequate consideration and then breached its terms; 2) CentiMark will suffer irreparable harm due to the loss of customer relationships, goodwill, and confidential information unless injunctive relief is granted; 3) greater harm to Lavine would not result from an injunction to preserve the status quo; and 4) the requested injunction will serve the public interest by protecting important business tools. Doc. No. 45.

In support of his Motion to Dissolve or Modify TRO, Lavine argues that: 1) the Employment Agreement is not ancillary to his employment and thus is unenforceable; 2) enforcement of the covenant not to compete of the Employment Agreement is not reasonable because CentiMark is overreaching by attempting to keep Lavine unemployed even though, he was discharged involuntarily; and 3) if it is not dissolved, the TRO should be modified to allow him to earn a living. Doc. No. 54. Because CentiMark and Lavine's Motions address similar

points and both involve application of the same legal principles, they will be addressed together in this Memorandum Opinion.

According to applicable case law, when considering a motion for preliminary injunctive relief or a TRO, this Court must consider four factors: 1) whether the movant has shown a reasonable probability of success on the merits; 2) whether the movant would be irreparably injured by denial of such relief; 3) whether granting the preliminary injunction or TRO will result in greater harm to the nonmoving party; and 4) whether granting the preliminary injunction would be in the public interest. *S.I. Handling., Inc. v. Heisley,* 753 F. 2d 1244, 1254 (3rd Cir. 1985). The Court will consider these factors in turn.

1. *CentiMark's Reasonable Probability of Success on the Merits*

Both CentiMark's argument that they have demonstrated a reasonable probability of success on the merits and Lavine's argument that CentiMark has not demonstrated the same are premised on whether Lavine entered into a valid, enforceable Employment Agreement with CentiMark, which undisputedly contained a covenant not to compete and other post-employment obligations. Many of the same well-briefed arguments on this issue were previously brought before this Court in support of and in opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. See Doc. Nos. 25, 35.

Courts applying Pennsylvania law will enforce restrictive covenants which are: (1) incident to an employment relationship; (2) reasonably necessary to protect the employer's interests, and (3) reasonably limited in duration and geographic scope. *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007); *Hess v. Gebhard Co. & Inc.*, 808 A.2d 912, 917 (Pa. 2008).

This Court has carefully considered each parties' arguments pertaining to the validity of Lavine's Employment Agreement and finds that the Agreement and its post-employment

3

obligations are valid and binding.  First, as previously discussed in the Court's Memorandum Opinion denying Lavine's Motion to Dismiss, Lavine's argument that he effectively had "no choice" but to sign the Employment Agreement is not persuasive.  Lavine was in the process of becoming an employee of CentiMark when he signed the Employment Agreement and therefore no further consideration was required.

The present situation is distinguishable from *George W. Kistler, Inc. v. O'Brien*, 347 A.2d 311, 315-16 (Pa. 1975), upon which Lavine relies, for several reasons, including that it is not conceded that all employment terms were finalized prior to signing the agreement which refers to Lavine as a "pending employee" and "candidate for employment," and the employment application (Doc. No. 35-1) stated that an employment agreement would have to be signed prior to employment.  This application put Lavine on notice that signing the Employment Agreement was a condition precedent to his employment.  Lavine's situation is distinguishable from *Arthur J. Gallagher Co. v. Reisinger*, 2007 WL 1877895 (W.D. Pa. June 29, 2007), in which an employment agreement was invalidated where the employee first learned of his employment agreement containing a restrictive covenant over a month after he began his employment.

Here, as in *Fisher Bioservices, Inc. v. Bilcare, Inc.*, 2006 WL 1517382 (E.D. Pa. May 31, 2006), Lavine had a choice to sign his Employment Agreement and no further consideration beyond his employment with CentiMark was necessary.  Enforcement of the Employment Agreement is further supported because Lavine was permitted to have an attorney review the Agreement and ask questions about such before he signed it.  *See Nat'l Bus. Sys., Inc. v. Wright*, 2 F. Supp. 2d 701, 707 (E.D. Pa. 1998).  The record, which demonstrates that consistent with CentiMark's practice Lavine was provided with a copy of an Employment Agreement prior to

commencing his employment, supports the validity of the Agreement's post-employment obligations. Rudzik Dep. 78-79.

The Court also finds that the preliminary injunction is reasonably necessary to protect CentiMark's interests because Lavine had, and may still have through the "missing hard drive", access to a list of all CentiMark warranty customers, the date their warranty was set to expire, and the customer's contact information. Lavine Dep., 86-89. Because discovery was inhibited by the "missing hard drive", it is now impossible to verify Lavine's statement that "all documents relating to CentiMark in either electronic or hard copy form have been returned to CentiMark." As previously noted, this list, which details current and former customers of CentiMark and when their warranties would expire would assist in solicitation of business, in what both parties concede is a highly competitive market. Lavine Dep. 44-1, 48. Lavine also developed long-term customer relationships with approximately 1,000 businesses (350 of which he had sales activity with in his last two years of employment) and the skills necessary to solicit their business over the twelve years that he worked for CentiMark. Rudzik Dep. Exh. Z. Indeed, Lavine had no prior experience in the commercial roofing industry before he began his employment for CentiMark. Lavine's customer relationships and contacts gained while he worked at CentiMark would be just as valuable to a competing company as access to CentiMark's written materials.[1] This is evidenced by Great Lake's recent emergence into the flat roofing business when it had previously primarily focused on shingle roofing. Lavine Dep., 101,

---

[1] Defendant's reliance on *Insulation Corp. of America v. Brobston*, 667 A.2d 729 (Pa. Super. 1995) for the proposition that it is not reasonable to enforce a covenant not to compete against a salesperson who is discharged for poor performance, does not apply, based upon the other factors in this case: *i.e.* Lavine's alleged downloading of confidential CentiMark information, former manager Robert Rudik's suspicion that he was planning to start his own business, failure to report subsequent employment, and frustration of the discovery process. *See Missett v. HUB Int'l Pennsylvania, LLC*, 6 A.3d 530, 539 (Pa. Super. 2010) for a discussion of other factors for consideration.

114. As such, the preliminary injunction enjoining Lavine from working for a competitor in the same geographic area is reasonably necessary to prevent CentiMark's information from being used by its competition and Lavine from using his skills developed while at CentiMark to a competitor's advantage.

Finally, CentiMark's post-employment covenant is reasonable because it is "within such territory and during such time as may be reasonably necessary for the protection of the employer . . . without imposing undue hardship on the employee." *Hayes v. Altman*, 225 A.2d 670, 672 (Pa. 1967). Lavine's post-employment covenant is reasonable because it restricts him from solicitation of customers within 100 air miles of his former sales territory which extended at least 75 miles from Detroit and when Great Lakes Roofing ("Great Lakes") competes in the same geographic area. CentiMark has also submitted evidence that Lavine has contacted former CentiMark customers which demonstrates that a preliminary injunction is reasonable to protect CentiMark's business relationships. See Lavine Dep. 114-18. Although he admits to being involved in sales, it is unclear what role Lavine has taken at Great Lakes, and therefore, a preliminary injunction incorporating the previous temporary restraining order will continue to protect CentiMark until the Permanent Injunction Hearing. Lavine Declaration ¶ 12; Doc. No. 24.

    2. *CentiMark's irreparable injury if a Preliminary Injunction is Denied*

Irreparable harm is harm "of a peculiar nature" for which "compensation in money alone cannot atone." *Opticians Ass'n of Am. v. Ind. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990) (quoting *Morton v. Beyer*, 822 F.2d 364, 372 (3d Cir. 1987)). In cases involving restrictive covenants, the "nature of the right that is injured" is the former employer's legitimate interest in protecting its business; as such, equitable relief is particularly appropriate. *Nat'l Bus.*

*Servs., Inc. v. Wright*, 2 F. Supp .2d 701, 709 (E.D. Pa. 1998). An employer has a legitimate interest in preventing an employee from leaving to work for a competitor, carrying with him the employer's goodwill, specialized training, and confidential information. *Id.*

CentiMark's main contention is that allowing Lavine to work in the same geographical area and industry constitutes irreparable harm because of the loss of relationships, goodwill, and confidential information which will result. Doc. No. 45, 7, *Wellspan Health v. Bayliss*, 869 A.2d 990, 997 (Pa. Super. Ct. 2005). This Court agrees that Lavine's position as a former salesperson for CentiMark gives him the customer relationships and information necessary to contact current and prospective CentiMark customers on behalf of Great Lakes, thereby damaging CentiMark's current and potential customer relationships. Damage to customer relationships has been held to constitute irreparable harm. *See Coventry First, LLC v. Ingrassia*, 2005 WL 1625042, at * 11 (E.D. Pa. July 11, 2005) ("[I]nterference with customer relationships satisfies the irreparable harm requirement . . . . Because the violation of a covenant not to compete results in interference with customer relationships causing nonquantifiable damages, such covenants are prima facie enforceable in equity.")

CentiMark's position is strengthened by the vagueness of Lavine's position with Great Lakes. As previously noted, it is clear that Lavine is involved in sales for Great Lakes and therefore he has the potential to irreparably harm business relationships that he helped to cultivate while he worked for CentiMark.

This result is supported by the United States District Court for the Eastern District of Pennsylvania's decision in *Telamerica Media Inc. v. AMN Television Mktg.*, 1999 WL 1244423, (E.D. Pa. Dec. 21, 1999). There, the Court found that the defendant's decision to join a competing company was "highly likely to result in un-compensable damage" to the defendant's

initial employer. *Id*. at *6. In *Telamerica*, the employee's knowledge of the former employer's business practices could easily be passed on to the new employer, and "a jury would have great [difficulty] assessing the damage that the use of said information would cause, beyond that of an immediate loss of business." *Id*. Finally, the *Telamerica* court found it relevant that the restrictive covenant at issue "explicitly states that damages are inadequate and that the parties agree to an injunctive remedy." *Id.* Here, as in *Telamerica*, Lavine could cause "un-compensable damage" to CentiMark by sharing confidential CentiMark information with Great Lakes and calling on his developed customer relationships that he acquired while working for CentiMark. Beyond this, Lavine's Employment Agreement states that Lavine acknowledged "that the remedies at law for any breach by him of the provisions of this Agreement may be inadequate and that CentiMark shall be entitled to injunctive relief against him in the event of any breach." Doc. 1 Ex. 2 ¶ 5.03. In short, Lavine has a real opportunity to harm CentiMark's legitimate business interests by working for Great Lakes, and thus, CentiMark has demonstrated that it will suffer irreparable harm if Lavine is allowed to work without restriction.

  3. *Possible Greater Harm Suffered to Lavine if Preliminary Injunction is Granted*

Lavine argues that the harm a preliminary injunction would cause him outweighs any benefit that would accrue to CentiMark. Doc. 54 at 11. In cases involving restrictive covenants, the harm to the employee "almost always seems greater than the harm to the company. . . . [T]he employee, as an individual, apparently will have a hard time financially surviving if he is out of work. By this superficial calculus, the harm to the employee is always greater." *Quaker Chem. Corp. v. Varga*, 509 F. Supp. 2d 469, 480 (E.D. Pa. 2007). That said, "the numerous courts that have specifically enforced non-compete covenants against the employee have concluded that, regardless of the relative wealth of the employer and employee, the harm to the employer trumps

the harm to the employee." *Id.* (citing *Fisher Bioservs., Inc. v. Bilcare*, Inc., 2006 WL 1517382, at *12 (E.D. Pa. May 31, 2006); *Graphic Mgmt. Assocs. v. Hatt*, 1998 WL 159035, at *18 (E.D. Pa. Mar.18, 1998)).

Despite his assertion of hardship, a preliminary injunction would not prevent Lavine from working. He could work for Great Lakes or another roofing firm outside the Detroit market, or in sales in a different industry in Detroit. As such, the Court cannot conclude that the harm to Lavine would outweigh any benefit to CentiMark.

*4. Public Interest*

This Court also finds that a preliminary injunction in this case best serves the public interest. Restrictive covenants of employment serve to protect businesses from competition from former employees in the same industry. This protection serves an important business interest and promotes capitalism and innovation. *See Quaker Chemical Corp. v. Charles Varga*, 509 F. Supp. 2d 469, 481 (E.D. Pa. 2007). In the present case, enforcing Lavine's Employment Agreement with CentiMark through a preliminary injunction reinforces the binding effect of employee obligations in valid employment agreements.

**IV. Conclusion**

A preliminary injunction incorporating the temporary restraining order already in place best serves the four factors identified by the United States Court of Appeals for the Third Circuit in *S.I. Handling*, 753 F. 2d 1244. It also maintains the "last, peaceable, noncontested status of the parties." *Opticians Ass'n of Am.*, 920 F.2d 187. The terms already in place will not be modified at this time because it is unclear what role Lavine has at Great Lakes and how CentiMark can be protected if he would continue his employment with Great Lakes. Specifically, protection is necessary because since Lavine's employment with Great Lakes

9

began, Lavine has had contact with CentiMark customers and Great Lakes has expanded into the flat roofing business. Lavine Dep. 122-23. The Court will address these factors again at the Permanent Injunction Hearing set for August 30, 2011. See Text Order of Court, July 18, 2011.[2]

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc: All Registered ECF Counsel and Parties

---

[2] Nothing in this Memorandum Opinion relieves any party of its burden of proof at the August 30, 2011, Permanent Injunction Hearing. The Court will withhold its ruling on Plaintiff's Motion for Sanctions (Doc. No. 59) until after the Permanent Injunction Hearing.